EUGENE G. IREDALE (CA Bar No. 75292)
LAW OFFICES OF EUGENE G. IREDALE
105 West F Street, Fourth Floor
San Diego, CA 92101
(619) 233-1525 (Tel)
(619) 233-3221 (Fax)

Attorney for defendant
LUTRELL MAURICE SHARPE

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>LUTRELL MAURICE SHARPE<br><br>Defendant | Case no. 07-cr-00544-ROS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

# I.
## ACCEPTANCE OF RESPONSIBILITY

Defendant Sharpe has entered a plea of guilt and has fully accepted responsibility for his conduct in this case. He has been in custody since May 2007. Mr. Sharpe understands that he has engaged in wrongdoing and is prepared to accept the punishment to be imposed by the Court. Certain of the government's characterizations are not fair. The government notes with a rhetorical flourish: "Since the early 1990s, the public has never been protected from this defendant." (Government's sentencing memorandum, p. 4.) It is true that Mr. Sharpe does have three previous convictions for criminal misconduct as an adult. One of them, however, involved the traffic offense of reckless driving which occurred in 1992. The other was based on a misdemeanor charge of carrying a concealed weapon, which resulted in three years summary probation in 1993. These two misdemeanors result in an additional assessment of two criminal history points, which causes the criminal history category to be IV rather than III. At the low end of the guideline range, this results in an increase of more than twelve months in the guideline sentence.

Mr. Sharpe does not intend to denigrate the seriousness of the misconduct, nor seek to

minimize his culpability. In making objections to the attribution of loss amounts, he is attempting to ensure that he provides the Court with sufficient information so that the sentence can be proportionate, fair, and as required under 18 U.S.C. §3553, no greater than necessary to satisfy the aims of punishment, deterrence, protection of the public and providing the defendant with educational, vocational training or other appropriate correctional treatment.

## II.
## THE LOSS AMOUNT FAIRLY ATTRIBUTABLE TO DEFENDANT IS BETWEEN $400,000 AND $1 MILLION

The major factual dispute between the parties is the issue of the proper calculation of the loss amount under USSG §2B1.1. The government contends that the loss amount is more than $1 million but less than $2.5 million, resulting in a 16 level increase in the offense level. Defendant Sharpe believes that a fair reading of the evidence and a proper application of the guideline analysis results in a determination of loss over $400,000 but under $1 million, which results in a 14 level increase.

If actual loss can be determined by resort to the evidence, actual loss is to be the benchmark of loss determination. If actual loss cannot be determined, a reasonable estimation of the loss is appropriate under §2B1.1 Application Note 3(C). A reasonable estimate of loss should be based upon available information including factors such as the fair market value of replacement cost or the reduction in the value of the asset involved. Of particular importance in this case is the Guidelines rule that loss under §2B1.1 cannot include "interest of any kind, finance charges, late fees, penalties, amounts based on an agreed upon return or rate of return, or similar costs." USSG §2B1.1, Application Note 3 (D)(i). The sentencing guidelines provide that a defendant is entitled to a credit against the loss calculation:

> In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of the sentencing from disposition of the collateral, or if the collateral has not been disposed by that time, the fair market value of the collateral at the time of sentencing.
> §2B1.1 Application Note 3(E)(ii)

The guideline calculation of loss in this case is governed as well by §1B1.3, relevant conduct. Under §1B1.3 the loss amount in a fraud case may be determined on the basis of all acts and

omissions committed, aided, abetted, or willfully caused by the defendant.  In the case of jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in <u>furtherance of the jointly undertaken criminal activity</u> may be considered relevant conduct. (emphasis added) [§1B1.3(a)(i)(B)]  The defendant's liability for the reasonably foreseeable acts and omissions of others are those acts and omissions that take place in "furtherance of the jointly undertaken criminal activity."  Under §1B1.3 relevant conduct may be based on the acts of the others if they were within the scope of the agreement regarding jointly undertaken criminal activity.  Application Note 2 to §1B1.3 notes in relevant part as follows:

> The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.  Under subsection (a)(1) and (a)(2) the focus is on the specific acts and omissions to be which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice or conspirator.

Application Note 2 reads in relevant part:

> A "jointly undertaken criminal activity" is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy.  In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that the defendant is accountable for the conduct (acts and omissions) of others that was both: (i) in furtherance of the jointly undertaken criminal activity and (ii) reasonably foreseeable in connection with that criminal activity.

The Application Note states that because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.  In order to determine the defendant's accountability for the conduct of others, the court should first determine the scope of the criminal activity the particular defendant agreed to undertake, that is, the scope of the specific conduct and objectives embraced by the defendant's agreement.  The conduct of others for which the defendant is liable in the determination of his own sentence must be conduct that was <u>both</u> in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant.  The conduct of others

1  that was not criminal activity jointly undertaken by the defendant is not relevant conduct under
2  §1B1.3.  Thus, the issue is not merely forseeablility of the conduct of others, but also the scope of
3  the defendant's own jointly undertaken criminal activity as well.  The defendant's relevant
4  conduct may not include the conduct of members of the conspiracy before the defendant joined
5  the conspiracy, even if the defendant knows of that conduct.

## A.  Real Property Loss Amounts

The government's loss amounts claimed for real properties and vehicle loans goes beyond proper loss analysis under the Sentencing Guidelines.  Among other things, the government has misapprehended the nature of Mr. Sharpe's objections.  The government notes, <u>inter</u> <u>alia</u>, in its sentencing memorandum "Incredibly, the defense argues that the defendant should not be held liable for losses of properties purchased in the name of his girlfriend/fiancee Misti Lenoir-Stewart and his cousin Angela Romious.  (See exhibit C; properties 9 and 11)."  (Government sentencing memorandum, p. 6.)  Property number 9 is the property located at 1747 Costada Court in Lemon Grove, California, held in the name of Misti Lenoir-Stewart and property number 11 is property located at 302 East Bethany Home Road under the name of Angela Romious.  Defendant has never claimed that he is not liable for the losses resulting from these transactions.  In fact, in his sentencing objections, filed on 26 December 2008, defendant noted specifically:

> Mr. Sharpe <u>is responsible for the loss for the following pieces of real property</u> because he participated in the underlying transaction and/or knowingly obtained proceeds from the transaction:
> 1. 5386 Altadonna Ave., Las Vegas, NV 89141
> 2. <u>1747 Costada Court, Lemon Grove, CA 91945</u>
> 3. 257 Palm Trace Ave., Las Vegas, NV 89148
> 4. <u>302 E. Bethany Home Rd., Phoenix, AZ 85012</u>
> 5. 18587 N. Porter Drive, Goodyear, AZ 85338
> 6. 1713 Sequoia Drive, Henderson, NV 89014
>
> (emphasis added)
> (Defendant's Objections to Presentence Report, p. 3)

Mr. Sharpe has never disclaimed responsibility for the loss resulting from the transactions involving Costada Court or Bethany Homes.  Mr. Sharpe does, however, object to the liability for the loss amounts of four specific properties.  He should not be sentenced on the basis of transactions in which he did not participate, of which he had no knowledge, and which were not

within the scope of the jointly undertaken criminal activity in which he engaged.

Specifically, Mr. Sharpe requests that the Court exclude from the loss calculation the properties listed as numbers 3, 6, 10 and 2 in the government's Exhibit C.  Property Number 3 was the transaction  in June 2004 involving property at 11159 Castelane Drive, Las Vegas, Nevada..  Alonzo Love purchased this property with a loan from Meritage Mortgage.  Mr. Sharpe had no participation in this transaction; had no knowledge of the transaction; and this transaction was not within the scope of jointly undertaken criminal activity.  The loss amount attributable to this transaction, according to the government's calculation, is $183,736.

The second transaction which should be excluded from this defendant's loss calculation involves the purchase of a house at Buena Martina Way in Las Vegas, Nevada.  Charles Dozzell purchased this property (listed on the government's exhibit as Number 6) with a mortgage from Finance America LLC.  The estimated loss attributable to this transaction is $210,000.  As with property number 3, this transaction was not within the scope of jointly undertaken criminal activity.

Third, there was a transaction that occurred in May 2006 involving property at 25591 West St. Catherine in Buckeye, Arizona.  Charles Dozzell purchased this property.  The mortgagee was New Century Mortgage.  Mr. Sharpe had no participation in this transaction.  It was not within the scope of jointly undertaken criminal activity.  The amount of loss attributable to this transaction is $101,000.  These three transactions add a total to the loss calculation of $494,000.

Defendant Sharpe believes that property 2 on the government's schedule of real property loans should not be included in determining the loss amount in his case.  The government's notes under "Fraud on Loans" section state that in the case of the Aviano Pines property, Alonzo Love "claims to have made $6500/mo working for MD2 as marketing rep for two years.  'Latrell Sharpe' and 'Marcus Dodel' verify Love's status as a MD2 employee."

At this point it is important for Mr. Sharpe to describe his involvement with the entity called "MD2."  Paragraph 13 of the presentence report alleges that on "July 24, 2002, Sharpe, Sellers, Bowens, and M. Dozzell submitted articles of incorporation and related documents to the

1  Nevada Secretary of State as a means to incorporate MD2 as an LLC..." Mr. Sharpe, in his
2  original objection to the presentence report, sought a correction that he did not incorporate MD2
3  and that he did not control MD2. The MD2 stands for Marcus Dozzell. In its objections to the
4  presentence report, the government properly states that "neither Sharpe nor Bowens were listed
5  in the original articles of incorporation or any filed documents." (Government sentencing
6  memorandum, p. 1.)
7       During 2005, Mr. Sharpe did become involved in activities with MD2. The government
8  has attached specific documents showing that on, what is says was a "backdated" document, on
9  December 5, 2005, Lutrell Sharpe signed as a Chairman of the Board of MD2 Capital
10 Investments LLC. Likewise the government points out that in 2006, Mr. Sharpe opened a bank
11 account in the name of MD2 (this account had $200).
12      Mr. Sharpe was not involved in the affairs of MD2 in the year 2004. In fact, he was not
13 the person who verified Mr. Love's status as a MD2 employee on the Aviano Pines transaction.
14 The document which is the verification of employment, signed by "Latrell Sharpe", was <u>not</u>
15 <u>signed by defendant Lutrell</u> Sharpe. *See* Exhibit 1. A comparison of Mr. Sharpe's true signature
16 on another document (Exhibit 2) with the signature on the request for verification, shows that the
17 handwriting is grossly dissimilar. Mr. Sharpe's name is properly spelled on Exhibit 2, but is
18 misspelled in Exhibit 1, the verification form dated in 2004. The signature on the request for
19 verification of employment is not Mr. Sharpe's. With respect to the Aviano Pines property, it
20 should be noted that of the $147,000 loss, almost $140,000 was the result of a later, separate
21 transaction after the initial acquisition, in which Mr. Love directed Michelle Parker to purchase
22 the Aviano Pines property for $396,000 in 2005. The property was foreclosed and resold in June
23 2008. It was the second transaction, in which the sales price was increased from the original
24 transaction price of $263,000 to an inflated price of $396,000, that resulted in the loss. Mr.
25 Sharpe had no participation or knowledge of the second transaction involving Aviano Pines. The
26 exclusion from the loss amounts of these four transactions results in a reduction of $631,736
27 from the loss total.
28      Mr. Sharpe is properly be held liable for losses attributable to transactions involving 5386

Altadonna Avenue, Las Vegas, Nevada (where his wife was living). The government attributes $148,980 of loss amount to this transaction. The property at 1747 Costada Court was property owned by Mr. Sharpe's family for many years. The loss amount the government estimates as a result of this transaction is $139,500. Counsel has been informed that there has been no foreclosure proceedings commenced on this property, although a notice of default was recorded in mid-2007. Mr. Sharpe does not contest liability for a loss amount of $305,000 on the property located at 257 Palm Trace Avenue, Las Vegas, Nevada; nor the loss amount of $185,000 attributable to the transaction at 302 East Bethany Homes, Phoenix, Arizona. *See* Exhibit 3.

### B. Vehicle Loss Amounts

With respect to vehicle losses, defendant Sharpe respectfully objects to the inclusion of loss amounts of $173,000 for 2006 Bentley Continental purchased by Charles Dozzell. Counsel has been informed by Marcus Dozzell's attorney that this vehicle has been returned to the dealership. The inclusion of the entire amount as loss is inconsistent with §2B1.1(E)(ii). Mr. Sharpe objects to the inclusion of a total loss of $70, 206 for the 2007 Cadillac Escalade. This car had been previously been in the possession of a relative of Mr. Sharpe's who attempted to determine where to turn the car in, unsuccessfully. The relative therefore turned the car over to the titleholder, Angela Romious. Counsel's understanding is that Ms. Romious currently has the car and that it will be turned into the dealership in good condition. Even if one attributes a loss of 30% in value for these two cars, the vehicle loss figure is reduced by approximately $170,000. *See* Exhibit 4.

The losses reported on the cars are based on statements by dealerships to government agents over the phone and are not supported by any documentation. Defendant believes that these loss figures include assessments for interest, late fee penalties and the cost of attempted repossession of the vehicles. In the absence of any minimal breakdown of the loss figures with respect to the real property, it is highly likely that at least some of the real estate loss figures also include assessments for late fees, penalties, missed mortgage payments (which represent a return on a capital investment) and other items which are not properly assessed as a loss amount under §2B1.1. It is clear that, given these modifications, the properly calculated loss amount under

§§2B1.1 and 1B1.3 is over $400,000, but under $1,000,000.

### III.
### THE GOVERNMENT'S SENTENCING RECOMMENDATION VIOLATES THE PLEA AGREEMENT

The plea agreement provides as a condition that "[t]he government will recommend a sentence at the low end of the guideline range." (Presentence report, para. 134.) The low end of the guideline range, even under the government's calculations, is 84 months. The government's sentencing memorandum recommends a sentence of 86 months. (Government sentencing memorandum, p. 11.) This is a clear violation of the plea agreement.

### IV
### DEFENDANT'S GUIDELINE CALCULATIONS

Defendant is in general agreement with the government's guideline calculations, except that he believes that the loss amount enhancement should be 14, not 16 levels. This results in a Criminal History IV, Offense Level 23, with a resulting guideline range of 70-87 months. Defendant asks the Court to impose a sentence of 70 months in custody.

### V.
### REQUEST FOR RECOMMENDATION FOR 500 HOUR SUBSTANCE ABUSE PROGRAM

Mr. Sharpe asks the Court to recommend that he be permitted to participate in the Bureau of Prisons 500 hour substance abuse program. Although he has been able to remain free of controlled substance use, he had relapsed into a pattern of alcohol abuse on a daily basis before his arrest in this case, which began after the death of his mother  He has voluntarily participated in Alcoholics Anonymous and Narcotics Anonymous meetings during his pretrial confinement and would surely benefit from the BOP substance abuse program.

DATED: January 9, 2009                    Respectfully submitted,


                                          /s/ Eugene Iredale
                                          _____
                                          EUGENE G. IREDALE
                                          Attorney for defendant
                                          LUTRELL MAURICE SHARPE